NEW YORK REAL-ESTATE & BLDG. IMP. CO. *v.* MOTLEY.

(*City Court of New York, General Term.* November 25, 1892.)

RIGHTS OF TENANT—INJURY TO PREMISES.

A lease provided that, "if the building is damaged by fire without fault of the lessee, he shall only pay rent for such portion of the demised premises as he can reasonably occupy during the time required to make the necessary repairs; but, if the building be so damaged as to require rebuilding, this lease shall end, and the rent shall be paid up to such time." The building was so damaged by fire, without fault of the lessee, as to render it untenantable, but did not require rebuilding. *Held,* that the fire terminated the lease, under Laws 1860, c. 345, which provides that "the lessee of any building which shall be * * * so injured by the elements as to be untenantable shall not be liable to pay rent therefor, after such injury, unless otherwise expressly provided by written agreement." EHRLICH, C. J., dissenting.

Appeal from trial term.

Action by the New York Real-Estate & Building Improvement Company against Thorton N. Motley. Judgment for defendant. Plaintiff appeals. Affirmed.

For former report, see 16 N. Y. Supp. 209.

Argued before EHRLICH, C. J., and FITZSIMONS and NEWBURGER, JJ.

*N. B. Sanborn,* for appellant. *Cardozo Bros., (David Leventritt,* of counsel,) for respondent.

FITZSIMONS, J. The parties mutually executed a lease containing the following provision: "And it is further agreed by and between the parties hereto that if, without fault, neglect, or improper conduct of the party of the second part, his agents, servants, or tenants, the premises hereby leased, or the building, shall be damaged by fire, the elements, or otherwise, the party of the second part shall continue to pay rent only for such portion of the leased premises as he can reasonably occupy during the time required to make the necessary repairs; but if the building shall be so damaged or destroyed as, in the judgment of the parties of the first part, to require to be rebuilt, then, from the time of the happening of said events, or either of them, this lease, and the term hereof, shall wholly end and determine, and the premises be vacated and fully surrendered, and the rent shall be paid up to such time." The premises demised to defendant consisted of the basement, cellar, first and second floors. There were several other floors in the building. Defendant's premises were so damaged by fire during the lease as to render them untenantable, but it did not damage the building to an extent that required rebuilding thereof.

The question raised by this appeal is, did the fire terminate the lease, so as to relieve defendant from payment of rent after the fire? Under the provision of the lease, above set out, it is admitted that no such benefit inured to defendant; but he relies upon chapter 345, Laws 1860, for this relief. That act provides that "the lessees or occupants of any building which shall be * * * destroyed or be so injured by the elements or any other cause as to be untenantable and unfit for occupancy shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant."

Certainly, unless the parties, by their own written agreement, took this case out of the protection of the statute, the defendant is entitled to the benefit it affords. If we declare that they did so by virtue of their agreement above mentioned, we predicate our conclusion upon implication and inference merely, because clearly that agreement refers only to a partial destruction of the demised premises, and the damage or destruction of the building to such an extent as to require rebuilding of the same. Nothing is therein written concerning the total destruction of the whole of the demised premises so as to render the same untenantable. It is only in instances where the parties have by written agreement otherwise expressly provided that the lessee is deprived of the benefit of the 1860 statute, and we should not be overzealous in our efforts to spell out such an agreement from an uncertain and ambiguous covenant, such as is here presented. Upon the contrary, we believe that the lessee should receive the shelter afforded by that act, unless by his own consent he placed himself outside its shelter. Can the statute of 1860 be incorporated in the agreement made between plaintiff and defendant, without conflicting with, contradicting, or in any wise interfering with, its terms? If so, then it appears clear to us that the parties did not intend to provide against that statute, and that it therefore applies to this case. The statute of 1860 is, in effect, incorporated into every lease, unless otherwise expressly provided by written agreement or covenant. *Butler* v. *Kidder*, 87 N. Y. 103. This being so, we, must consider that the agreement of plaintiff and defendant contains the privileges or exceptions of said act, unless such inclusion would be repugnant to such agreement, which we can readily ascertain. The agreement, with the privileges of said act in, would read as follows: "And it is further agreed by and between the parties hereto that if, without fault, neglect, or improper conduct of the party of the second part, his agents, servants, or tenants, the premises hereby leased, or the building, shall be damaged by fire, the elements, or otherwise, the party of the second part shall continue to pay rent only for such portion of the leased premises as he can reasonably occupy during the time required to make the necessary repairs. If the whole of the demised premises shall be so destroyed or be so injured as to be untenantable and unfit for occupancy, the party of the second part shall not be liable or bound to pay rent to the lessor after such destruction or injury; but if the building shall be so damaged or destroyed as, in the judgment of the parties of the first part, to require to be rebuilt, then from the time of the happening of said events, or either of them, this lease, and the term hereof, shall wholly end and determine, and the premises be vacated and fully surrendered, and the rent shall be paid up to such time." As amended, this agreement strikes us as being harmonious, consistent, unambiguous, and entirely just and reasonable; carries out the spirit of the act of 1860, without interfering with the written agreement of the parties thereto; and was not intended, we think, to do away with said act.

For these reasons, and finding no error in the appeal record, we think that the judgment should be affirmed, with costs.

NEWBURGER, J., concurs.

EHRLICH, C. J., (*dissenting*.) The parties mutually executed a lease containing the following provisions: "It is further agreed by and between the parties hereto that if * * * the premises hereby leased, or the building, shall be damaged by fire, the elements, or otherwise, the party of the second part shall continue to pay rent only for such portion of the leased premises as he can reasonably occupy during the time required to make the necessary repairs; but if the building shall be so damaged or destroyed as, in the judgment of the parties of the first part, it requires to be rebuilt, then, from the time

of the happening of the said event, or either of them, this lease, and the term hereof, shall wholly end and determine, and the premises be vacated and fully surrendered, and the rent shall be paid to such time." The act of 1860 provided that "the lessees or occupants of any building which shall * * * be destroyed or be so injured by the elements or any other cause as to be untenantable and unfit for occupancy shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant." Pending the existence of the lease, the portion of the premises which plaintiff demised to defendant was so far damaged by fire as to render it unfit for occupancy during the making of repairs, but the damage was not so great in extent that in the judgment of the lessor the structure required to be rebuilt.

The vital point of the controversy is whether the statute shall control, and thus relieve respondent from all liability for future rent, or whether the provisions of the lease shall be applicable and controlling. The court of appeals has decided (*Butler* v. *Kidder*, 87 N. Y. 103) that in order to take away the statutory protection the lease need not contain an express covenant to that precise effect, but its express provision must clearly show that the parties had in mind the contingency which the statute mentions, and that they by mutual agreement made different provision therefor; that is to say, the law being enacted for the benefit of the lessee, and no reason founded in public policy requiring its enforcement, he may waive its provisions at his pleasure, and he does waive them by joining in a lease of which the express covenants plainly show a mutual intention that they shall not be invoked or relied on. The language of the lease, fairly construed, then becomes the law of the case, and governs the rights and fixes the obligations of the parties, respectively. It is manifest that the parties had clearly in mind the contingency mentioned in the statute, to wit, damage to the premises by fire or other elements; and in that event the express language of the lease makes provision as to the rights and obligations of the parties, which provision, we think, is inconsistent with the right of surrender that the respondent claims, and in the court below upheld. The statute provides for a surrender at the option of the lessee. The lease itself provides for its abrogation upon the exercise of the judgment of the lessor as to the need or propriety of rebuilding the damaged structure. The terms of the statute measure the extent of damage justifying a surrender by the fitness for occupancy of the demised premises. By the terms of the lease its cancellation depends upon the judgment of the lessor, or its election to rebuild the premises. To us it seems clear that the parties meant to provide for every degree or extent of damage caused by fire or the elements. In any conceivable case, such damage either would be extensive enough to invoke the lessor's judgment that the structure should be rebuilt, or it would not be sufficient to produce that result, although for the time being it might render wholly untenantable the demised premises. On the other hand, the structure itself might require rebuilding, although the floors or portions thereof covered by the lease might be wholly uninjured and undisturbed.

Respondent's contention, however, appears to be that the precise language of the lease in controversy does not provide for a degree of damage rendering the whole of the demised premises untenantable and unfit for occupancy, and therefore, the lease being silent, the terms of the statute become operative, and its protection available. But we think such construction of the language employed would be forced and unnatural. The language, "pay rent only for such portion," is fairly equivalent to "shall not pay rent except for such portion." The same meaning might be expressed by the language, "shall pay rent for such portion, if any, of the leased premises, as he can reasonably occupy." The negative expression, "only for such portion," carries no implication that there must be some portion remaining in a tenantable

condition. The parties evidently contemplated, not merely the unfitness for occupancy caused by fire, but such also as might be occasioned by the presence of workmen, materials, and tools and machinery employed in making repairs.

The language of the lease should be interpreted according to the same rules of construction as if no statute were in existence. It being plain, beyond controversy, that the parties had in mind the contingency which the remedial statute provides for, and have made express covenants concerning the same, the court has only to determine the meaning of the language employed, and discover whether or not the parties meant that the statutory provisions should be applicable. We are satisfied that the parties intended that any damage by the elements not sufficient to call for the rebuilding of the demised premises should cause no cancellation of the lease, but that reparable damage should justify only a suspension or diminution of the rent reserved until the premises might be properly repaired. These views are not at variance with the opinion of the general term upon the former appeal, (16 N. Y. Supp. 209;) the question there being whether evidence tending to show an eviction should have been submitted to the jury. Let the usual order for a new trial be entered, with costs to appellant to abide the event.